UNITED STATES of America ex rel.
James D. ANDERS

v.

Alfred T. RUNDLE, Superintendent State Correctional Institution, Graterford, Pennsylvania.

Misc. No. M-69-294.

United States District Court,
E. D. Pennsylvania.

April 14, 1970.

## MEMORANDUM

JOHN MORGAN DAVIS, District Judge.

Relator seeks Federal Habeas Corpus relief alleging a denial of his right to counsel and in the alternative a denial of his right to effective assistance of counsel. On October 16, 1965, relator was arrested by a stake-out team, inside of a warehouse in Berks County. He was charged with burglary and after retaining private counsel he was brought to trial on March 24, 1966.

Relator pleaded guilty at this trial. However, on April 29, 1966, he was permitted to withdraw his guilty plea. He was again brought to trial on June 23, 1966. At this time, he was represented by Emmanuel Dimitriou, Esquire, of the Public Defenders Office. At the commencement of the proceedings on the second day of this trial, the following discussion took place between the court and Mr. Dimitriou. Also present were Leonard J. Gajewski, Esquire, and defendant Anders.

*BY MR. DIMITRIOU:*

If it please the court, I called this conference for the purpose which I made clear to the court yesterday morning before the beginning of the trial in this case, that I wanted Mr. Anders to state for the record whether I was to conduct the trial as his attorney or whether he was going to conduct the trial and I was going to sit merely in an advisory capacity, at which time I would insist that any advice I gave him would be part of the record. At that time, Mr. Anders indicated that he would let me conduct the trial to the best of my ability. However, since that time, and specifically with reference to this morning, it would appear that he is not willing to follow my advice or to allow me to conduct the trial as I see fit. If I'm not going to be able to do that, and be responsible for my own decisions, then I would ask the court to allow me to withdraw or to ask Mr. Anders whether he wants to conduct the trial in his own behalf from this point forward. I will still be available to sit if he wants my advice. But again, I would insist that any advice I give him will be part of the record. I don't want to be in the position where my client is conducting a trial in which I'm supposed to be the attorney and for which I'm going to be responsible at a later time. Now, that's the purpose of this conference. I want Mr. Anders to make it very clear as to what he wants to do. I thought we had it clear yesterday, but apparently we didn't.

[June 23, 1966 N.T. p. 22].

This statement of Mr. Dimitriou was followed by a long colloquy between the court and defendant Anders, running some fifteen pages in the trial record. Mr. Anders requested certain notes of testimony of his first trial. The Court agreed to furnish him with these notes of testimony. However, in view of the time factor involved it was agreed that a juror would be withdrawn and the case would be continued until the September term. It is significant to note that on page 30 of the Notes of Testimony of the June 23, 1966 trial, Mr. Anders stated "I'll try to make the bail and get my own attorney. It would be better." On page 37 and 38 of the same transcript the court stated: "Then you will agree to the withdrawal of a juror so that this case can be declared a mistrial and continued until September?

*MR. ANDERS:* Sure. I don't care how you do it.

*THE COURT:* And, at that time you, of course, should realize that you

should get your own attorney, if you can. Mr. Dimitriou is a quasi public official. When a man doesn't have an attorney, they assign the case to him. He, in turn, sometimes assigns it to other lawyers who we believe are competent to represent a defendant. *So every defendant who has no funds will at least have counsel to represent him. You will have counsel of your own, or we will assign somebody to you at the September term.* (Emphasis added.)

MR. ANDERS: Your Honor, if I make bail, I'll get me a lawyer. I'll get a lawyer, you can believe that.

Relator's third trial commenced September 19, 1966. He was represented by Clement Cassidy, Esquire, of the Public Defender's Office. At the start of this third trial, the following colloquy took place between Mr. Cassidy and the Court.

THE COURT: Have you any statement that you wish to make to the court before we proceed with selecting the jury, Mr. Cassidy?

MR. CASSIDY: Yes, I do, Your Honor. This is somewhat unusual, inasmuch as the defendant wishes to conduct his own trial. I have no objection to this, if the court has no objection. As I understand my position in court today, by the side of the defendant, it is merely to advise him as he tries his own case as counsel for himself. I discussed the matter of the dangers, and perhaps the benefits of this manner of proceeding, and he understands this, Your Honor. From my conversation with the defendant, I gather that there are certain preliminary things he would like to bring to the court's attention. Am I correct in that, Mr. Anders?

THE COURT: Come up, Mr. Anders.

MR. ANDERS: (approaching the Bench).

THE COURT: Mr. Cassidy, you have been selected by the Public Defender * * *

MR. CASSIDY: That's correct, Your Honor.

THE COURT: * * * To assist Mr. Anders in this trial, the court now understands that Mr. Anders wishes to conduct his own trial.

MR. CASSIDY: That's correct.

THE COURT: And to also participate in the selection of the jurors.

MR. CASSIDY: He wishes to select his own jury, with no advice on that particular element, Your Honor.

THE COURT: Well, you are going to be with him when he needs advice, and he may ask you for it?

MR. CASSIDY: Correct.

Mr. Anders then acted as his own counsel throughout the trial; he picked a jury, raised objections and addressed the jury in summation. Following which the jury rendered a verdict of guilty.

Although it appeared rather obvious that Mr. Anders voluntarily and knowingly waived his right to counsel and elected to act as his own attorney, we appointed counsel and granted an evidentiary hearing to afford petitioner every opportunity to factually establish his allegations of error. Said hearing was held October 6, 1969.

After a careful review of the entire record, including the transcript of the October 6, 1969 habeas corpus evidentiary hearing, and observing petitioner's demeanor on the stand, we can only conclude that petitioner was fully aware of his right to counsel. He deliberately, intelligently and voluntarily waived his right to counsel and attempted, perhaps unsuccessfully, to try his own case.

Mr. Anders testified that he misunderstood the function of Mr. Cassidy. He further testified that he did not try the case. (See October 6, 1969, N.T. p. 45.) However, the record is replete with numerous examples, some of which were previously set forth, which irrefutably established that Mr. Anders did, in fact, try his own case and did, in fact, fully understand the respective roles of Mr. Cassidy as advisor, and petitioner as trial counsel.

Furthermore, it would be a miscarriage of justice to accept petitioner's explanation of the events which occurred. His capacity for truth leaves much to be desired. In fact, he readily admitted that he planned to lie at his first trial as is evident from the following:

BY MR. ANDERS: Here is what happened to my first trial. I was going to get up and I was going to say that the cop called me up and told me to bring him a lunch, see, which he didn't do, but I was going to say this anyway, so then I sat there and my lawyer said, "if you take the stand, they are going to bring up your army record," which was years ago. I says to him "what do you mean?" He says, "well, they are going to bring up your past." So I says, "well, I had better stay off the stand." So I stay off. (October 6, 1969 N.T. p. 60.)

During the course of the Federal Habeas Corpus evidentiary hearing respondent called E. H. Dimitriou, Esquire, to the stand. Mr. Dimitriou testified:

As the time for trial approached, he (Anders) made it clear that he wanted to conduct his own trial. At that time I advised the Court that this was Mr. Anders' decision, and I further advised the Court that because of the case load that I had, that I was not going to sit with Mr. Anders in an advisory capacity during his trial, since I had other cases to try, but I would have someone appointed who would be available for that purpose, and I did proceed to ask Mr. Cassidy to act in that capacity. (October 6, 1969 N.T. p. 91.)

In addition, Mr. Cassidy testified that Mr. Anders was fully aware of his rights and there was no misunderstanding as to the manner in which the trial was to be conducted:

I came into the courtroom. I introduced myself as Mr. Anders stated: "I am Mr. Cassidy: I am here to advise you." And we had a discussion about that privately, Your Honor, and I stated: "You are, as I understand it, going to conduct this case. You are going to ask the questions. You are going to cross-examine witnesses. You are going to make motions, and you are going to speak to the jury."

And he clearly indicated to me by shaking his head and saying yes, that he understood just exactly what was going to happen. (October 6, 1969, N.T. p. 101.)

In view of the above we can only conclude that Mr. Anders allegations of error are totally without merit. We therefore deny relator's petition for a Writ of Habeas Corpus. There is no probable cause for appeal.

It is so ordered.